THE STATE OF KANSAS, *Appellee*, v. W. E. JACKETT, *Appellant*.

No. 17,513.

### SYLLABUS BY THE COURT.

1. WITNESSES—*Indorsing Names on Information—Discretion of Court.* Permission to indorse upon an information, when a case is called for trial, the name of the court reporter who merely testified to the correctness of his report of the testimony of witnesses given at a former trial, and the name of another witness whose testimony was given in rebuttal, was within the proper discretion of the district court.

2. ——— *Continuance.* The indorsement upon an information of the names of witnesses referred to in the above paragraph afforded no ground for a continuance.

3. EVIDENCE—*Clothing of Deceased Competent Evidence.* Upon the trial of a charge of murder by shooting, the clothing worn by the deceased when killed may, when identified, be received as evidence tending to show the character and nature of the wound, the manner and means of death, and the proximity of the person using the weapon to the one who is slain. But the spectacular parade of bloody garments should not be permitted.

4. ADMISSIONS—*Voluntary Statements of Accused Admissible.* The voluntary statements of an accused person, whether made before or after an alleged crime, which statements in connection with other evidence tend to prove guilt, should not be excluded because they are not part of the *res gestæ*, nor upon the ground that the acccused is thereby, in effect, compelled to testify against himself.

5. EVIDENCE—*Hearsay.* An offer of proof which includes hearsay testimony of the witness, without which the proposed evidence appears to be irrelevant to the issue, is properly excluded.

6. SELF-DEFENSE—*Covered by Instructions Given.* Instructions concerning the right of self-defense, given and refused, and remarks made by a prosecuting attorney in argument to the jury are considered, and held to be free from any error prejudicial to the rights of the appellant.

Appeal from Kingman district court. Opinion filed July 7, 1911. Affirmed.

*John H. Connaughton,* and *J. Q. Jenkins,* for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *S. S. Alexander,* county attorney, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is the second appeal in this case from a conviction of manslaughter in the fourth degree. The facts appearing upon the last trial are substantially the same as upon the first, and are stated in the former opinion. (*The State v. Jackett,* 81 Kan. 168.)

Error is assigned upon an order allowing the indorsement of names of witnesses upon the information when the case was called for trial and in refusing a continuance after such indorsement had been made. One of the names indorsed was that of the court reporter, who merely testified to the correctness of his report of the testimony of witnesses given at the former trial. The other name was that of a witness whose testimony was given in rebuttal. It was within the discretion of the district court to permit the indorsement of the names, as held in repeated decisions of this court, and this discretion appears to have been properly exercised. This action afforded no sufficient reason for a continuance and there was no error in refusing the application therefor based upon the allowance of such indorsement.

Error is also alleged in permitting the clothes worn by the deceased at the time of his death to be identified and offered in evidence. The objection is that there was no question of the fact that deceased had been killed by a gunshot wound, and therefore the bloody garments could serve no purpose except to inflame the passions of the jury. That such evidence is usual accords with common observation. The duty devolved upon the state to prove that death was caused by a bullet discharged from a revolver, as alleged in the in-

formation, for the plea of not guilty put that allegation in issue. The bullet holes in the clothing tended to prove the allegation. Such evidence serves to illustrate the character and nature of the wound, the manner and means of death, the proximity of the weapon to the victim, and the like, and is ordinarily competent. (*The State v. Moore*, 80 Kan. 232; Underhill, Crim. Ev. § 48; Wharton's Crim. Ev., 8th ed., §§ 312, 767.) The evidence does not show that the clothes were bloody, although that fact may perhaps be inferred, and if so, would further tend to show that the holes shown were caused by a bullet penetrating the body. The spectacular parade of bloody garments may, it is true, induce passion, and should not be allowed, but nothing of the kind appears here, only the production of the garments showing the rents claimed to have been made by a bullet.

Another objection is to the testimony of a witness purporting to relate a statement made by the appellant to a neighbor the next morning after the alleged shooting. The witness testified that he told appellant to change his clothes and clean up, that they were swearing out a warrant for him, and the constable would be there to take him to Kingman; that if the boy died they would hang him; whereupon the appellant swooned, sat down and said that he wanted protection, and said: "I guess I have killed him." The argument in support of the objection is that the statement was not part of the *res gestæ* and in effect the witness was compelled to testify against himself. The testimony was not offered as part of the *res gestæ*, but as an admission tending to prove guilt. Statements of the accused, whether made before or after the commission of an alleged crime, although not amounting to a confession or direct acknowledgment of guilt, are competent if in connection with other evidence they tend to prove it. (*The State v. Campbell*, 73 Kan. 688; 12 Cyc. 418.) The other objection, that the party was compelled to

testify against himself, is disposed of in the opinion in *The State v. Inman,* 70 Kan. 894, where such a contention was held to be without substance. No other objections to this testimony are presented.

Complaint is made of the exclusion of certain evidence. To fairly state the appellant's contention concerning this matter it is necessary to refer briefly to the circumstances. On the night of the homicide a number of young men from seventeen to twenty-three years of age were engaged in various depredations about the village, and about eleven or twelve o'clock proceeded to throw stones, gathered from the railroad track near by, upon the appellant's small building, used as a restaurant, where he was sleeping, and which was his home. The deceased was among the number engaged in these depredations and in throwing the missiles. While this stoning was in progress some one, apparently coming out at a corner of appellant's building, fired five shots in succession, and the assailants thereupon left for another part of town, committing various trespasses; and later, about one o'clock, returned to the vicinity of appellant's building where they separated, several passing on to another point from which they resumed the fusilade of stones. The deceased and four others remained at a street corner, where the party had separated, but threw no stones at that time. While the second stoning was going on two shots were fired, one of which caused the death of the deceased. These two shots, from the flashes seen by witnesses, appeared to have been delivered from the side or near the side of appellant's building. The appellant offered to show by a Mrs. Schoop that from June, 1907, to about the first of April, 1908, while she was living in one of appellant's houses as a tenant, the house was stoned about fifty times in the nighttime by parties unknown to her, which fact she communicated to the appellant, and that she had heard from various parties that this stoning was done because she was a tenant of appellant. This

offer was made in support of the claim of self-defense, but no connection was shown between the stoning of this witness's dwelling by unknown persons and that of the appellant's restaurant on this occasion, several months afterward, except that both buildings were owned by the same person. If there was any connection between these occurrences making the offer relevant it should have been shown. Information given to the witness by other people concerning the cause of the attack upon her dwelling was only hearsay. If her informants had knowledge of any facts pertinent to the issue they should have been called to give it. An offer of proof which includes hearsay testimony of the witness, without which the proposed evidence appears to be irrelevant to the issue, is properly excluded.

Several instructions were requested by the appellant relating to his right to defend his person and property against the unlawful attacks of any person or persons or of a riotous assemblage. The appellant insists that while the law of self-defense as applied to an attack by an individual was correctly given, rules applicable where an attack is made by a riotous assemblage were not stated. In instructing the jury concerning the right of the appellant to defend his person and property, the court did not limit this right to the assaults of an individual. The court said:

"If you find from the evidence that the defendant, W. E. Jackett, made the assault on the deceased, Geo. McMichael, which resulted in his death, and that in making said assault he was prompted by a fear upon his part that the deceased, George McMichael, or those associated with him, would assault him or injure or destroy his property, and that they were about to do so immediately, thereby creating in him a reasonable and well-grounded belief that he was about to lose his life or suffer great bodily harm immediately, at the hands of his assailant, or that his property was about to be destroyed immediately, he would be justified in taking the life of his assailant, and you should so find."

Nothing would have been gained of value to the appellant, or in the force or clearness of the instruction, by designating the deceased and his associates as a riotous assemblage. The reference to the deceased or his associates in the above quotation was repeated in other instructions, plainly indicating the application of the right of self-defense to attacks made by the company of men with which the deceased was acting. The instructions given covered every phase of the case and carefully guarded the rights of the appellant. Therefore there was no error in refusing those requested.

Objections were made to the remark of an attorney for the state in the closing argument in which he said:

"Mr. Adams (referring to the attorney for the defendant) never had a guilty client in his life. As based upon the evidence in this case, I say to you that you can not afford to acquit this defendant, on account of the example."

The objection was overruled and the remark held to be proper. The abstract does not set out what had been said by the appellant's attorney to which the statement that he "never had a guilty client in his life" was probably a retort, and we can not say that it called for an admonition or withdrawal by the court. The other part of the statement was an observation expressly declared to be based upon the evidence. Certainly if the evidence established the defendant's guilt a jury could not afford to acquit. It is true that this is not because of the example, but because it would be a violation of duty, but the reference to the example was within the bounds of reasonable discussion.

It is finally insisted that the verdict is not sustained by the evidence. It was, however, based upon evidence which the jury deemed sufficient, and the district court having approved the verdict, upon the well-known rule that a finding based upon competent evidence tending to prove every material fact can not be set aside by this court, the verdict must be upheld. The jury found the appellant "guilty of manslaughter in the fourth degree

in that he did involuntarily kill one George McMichael, by a weapon or by means neither cruel nor unusual, in the heat of passion, and under circumstances wherein said killing was neither justifiable nor excusable."

This verdict is in accordance with section 2514 of the General Statutes of 1909 (Gen. Stat. 1868, ch. 31, § 26). The evidence was sufficient to sustain this conclusion and the judgment is affirmed.